JS-6

MICHAEL N. MILLS (SB #191762)
SHANNON L. MORRISSEY (SB #307144)
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: (916) 447-0700
Fax: (916) 447-4781
Email: michael.mills@stoel.com

Attorneys for Defendant
California Resources Production Corporation

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENVIRONMENTAL DEFENSE CENTER, a non-profit corporation,<br><br>    Plaintiff,<br><br>  v.<br><br>CALIFORNIA RESOURCES PRODUCTION CORPORATION, a corporation,<br><br>    Defendant. | Case No. CV 16-02325-GW(RAOx)<br><br>**CONSENT DECREE** |

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| ENVIRONMENTAL DEFENSE CENTER, a non-profit corporation, | Case No. CV16-02325-GW RAO |
|---|---|
| Plaintiff, | **STIPULATION AND [PROPOSED] CONSENT DECREE** |
| v. | |
| CALIFORNIA RESOURCES PRODUCTION CORPORATION, a corporation, | |
| Defendant. | |

## I. STIPULATION

This Stipulation is entered into by and between Plaintiff, the Environmental Defense Center ("EDC"), and Defendant, California Resources Production Corporation ("CRPC") (hereinafter collectively referred to as the "Parties"). On January 19, 2016, EDC served California Resources Corporation ("CRC"), CRC's registered agent; the Administrator of the Environmental Protection Agency ("EPA") Region IX; the Executive Director of the California State Water Resources Control Board; and the Executive Officer of the Los Angeles Regional Water Quality Control Board with a Notice of Intent to file suit ("60-Day Notice") under Section 505(a) of the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1365(a), alleging violations of the Clean Water Act and the National

Pollutant Discharge Elimination System General Permit No. CAS000001, Water Quality Order No. 97-03-DWQ, as renewed by Order No. 2014-0057-DWQ ("General Permit"), relating to discharges of storm water from CRPC's South Mountain oil and gas field ("South Mountain Oil Field"), a 5,757-acre facility (the "Facility") located at 19242 South Mountain Road in Santa Paula, California 93060.

EDC filed a Complaint for Declaratory and Injunctive Relief and Civil Penalties ("Complaint") against CRC in the United States District Court, Central District of California, on April 5, 2016 (Civ. Case No. 16-02325-GW RAO), captioned *Environmental Defense Center v. California Resources Corporation*, seeking declaratory and injunctive relief, civil penalties, and attorneys' fees and costs. EDC served the Complaint on CRC on April 13, 2016. On April 20, 2016, EDC filed its First Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties ("First Amended Complaint"), adding CRPC as a second defendant. A true and correct copy of EDC's First Amended Complaint is attached hereto as **Exhibit "A."** On July 25, 2016, EDC dismissed defendant CRC, and simultaneously served the First Amended Complaint on defendant CRPC.

CRPC denies any fault, wrongdoing, or liability regarding all claims and alleged violations.

EDC and CRPC agree that settlement of these matters is in the best interest of the Parties and the public, and that entry of this Consent Decree is the most appropriate means of resolving this action.

EDC and CRPC stipulate to the entry of this Consent Decree without trial, adjudication, or admission of any issues of fact or law regarding EDC's claims or allegations set forth in its Complaint and its 60-Day Notice.

## II. ORDER AND DECREE

THIS MATTER came before the Court upon the foregoing Stipulation of the Parties. Having considered the Stipulation and the promises set forth below, the

Court hereby ORDERS, ADJUDGES, and DECREES as follows:

1. **Jurisdiction**: This Court has jurisdiction over the Parties and the subject matter of this action. The Parties stipulate that venue is appropriate in the Central District of California.

2. **Authority to Execute**: Each signatory for the Parties certifies for that Party that he or she is authorized to enter into the agreements set forth below.

3. **Binding Effect**: This Consent Decree applies to and binds the Parties and their successors and assigns.

4. **Application**: This Consent Decree applies to the operation, oversight, or both by CRPC of its Facility.

5. **Settlement and Dismissal**: This Consent Decree is a full and complete settlement of any and all claims that have been or could have been asserted based on the facts alleged in the Complaint or 60-Day Notice, and all other claims known and unknown existing as of the date of entry of this Consent Decree, that could be asserted under the Clean Water Act, 33 U.S.C. §§ 1251-1387, for violations occurring on or before the date of termination of this Consent Decree. EDC releases these claims and they are hereby dismissed with prejudice. Enforcement of this Consent Decree is EDC's exclusive remedy for any violation of the terms contained herein. It is understood and agreed by the Parties that the released claims include all claims of every nature and kind whatsoever, whether known or unknown, suspected or unsuspected, and all rights under Section 1542 of the California Civil Code are hereby expressly waived. Section 1542 provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

EDC acknowledges that it may hereafter discover facts different from, or in addition to, those that it now knows or believes to be true with respect to the released claims, and the Parties agree that this Consent Decree, including, without limitation, the releases contained herein, shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery thereof.

6. **No Admission**: This Consent Decree is a settlement of disputed facts and law. It is not an admission or adjudication regarding any allegations by EDC in this case or of any fact or conclusion of law related to those allegations. It is not evidence of any wrongdoing or misconduct on the part of CRPC.

7. **CRPC's Obligations**: CRPC agrees to the following terms and conditions in full and complete satisfaction of the claims covered by this Consent Decree:

    a. **Road Network Improvements**: No later than December 1, 2017, CRPC shall implement the road Best Management Practices ("BMPs"), as agreed upon by the Parties and listed below. CRPC shall continue roadway maintenance as necessary to maintain full compliance with the General Permit.

The road BMPs are as follows. The BMP locations are identified by the GPS coordinate location at the South Mountain Oil Field, specified in the following table.

| GPS Coordinate Location | Action |
| --- | --- |
| 34.338524; -119.053319 | Evaluate rationale for pipe outlet. If feasible, cut down pipe, or weld pipe down so that runoff flows to the ground. Install rip-rap. |
| 34.335005; -119.052431 | Repair asphalt on shoulder. |
| 34.334783; -119.052692 | Evaluate rationale for pipe outlet. If feasible, cut down pipe, or weld pipe down so that runoff flows to the ground. Install rip-rap. |
| 34.332399; -119.054164 | Repair asphalt and lay down gravel. |
| 34.331548; -119.050539 | Evaluate rationale for pipe outlet. If feasible, cut down pipe, or weld pipe down so that runoff flows to the ground. Install rip-rap. |

| GPS Coordinate Location | Action |
|---|---|
| 34.327819; -119.048510 | Repair asphalt. |
| 34.327100; -119.049048 | Repair asphalt. |
| 34.323737; -119.047654 | Install water bar. |
| 34.322070; -119.047088 | Install water bar. |
| 34.323178; -119.043506 | Repair asphalt. |
| 34.323667; -119.041654 | Repair asphalt. |
| 34.325746; -119.034630 | Fix the road and fill in with gravel. |
| 34.326969; -119.030001 | Replace aggregate, or fill with gravel; implement dust mitigation measures. |
| 34.330836; -119.012858 | Compact and fill with gravel. |
| 34.338947; -119.022121 | Health and safety issue: repair or replace road wall; maintenance and rock removal. |
| 34.342528; -119.016838 | Install rocks or gravel in ditch. |
| 34.346893; -119.024213 | Repair asphalt; place additional rocks. |

b. **Storm Water Management Measures at Industrial Sites Other Than Roads**: To improve storm water management at the Facility, CRPC shall develop and implement the following BMPs at the Facility:

i. **Well Pad Berming**: No later than December 31, 2017, CRPC shall construct berms at all well pads at the Facility that do not presently have berms. CRPC shall construct berms using compacted base material (aggregate) with a soil binder (bonding agent) at each well pad berm, and will construct all berms to ensure that the berms are able to contain sufficient storm water so as to prevent run-off. Specifically, CRPC will construct the berms by applying the compacted base material using a backhoe and a Vibra-Plate for compaction.

ii. **Specific Well Pad Maintenance**: No later than December 31, 2017, CRPC shall conduct the following maintenance and repair activities at specific well pads, identified by the following GPS coordinates at the South Mountain Oil Field:

(a) GPS 34.332060; -119.055347: CRPC shall repair the

|   |   |
|---|---|
| 1 | roadway and pothole surrounding the well pad.  CRPC |
| 2 | shall also fill in the rills with gravel up to the pad. |
| 3 | (b) GPS 34.338947; -119.022121:  CRPC shall remove the |
| 4 | rocks surrounding the well pad. |

        iii. **Inlet Protection**: In order to prevent storm water runoff and erosion, no later than December 1, 2017, CRPC shall place gravel bags around all presently unprotected inlets at the Facility.

        iv. **Continual Progress Updates**: CRPC shall provide progress reports and representative photos of the repair activities at the South Mountain Oil Field on the following dates:  April 1, 2017; September 1, 2017; and fifteen (15) days after completion of the final repairs in accordance with this Consent Decree, but no later than January 15, 2018.  Each progress report shall be transmitted to EDC and must include a description of the status of repairs, as outlined in Paragraphs 7(a) and 7(b) of this Consent Decree.  The photos must be taken at a variety of locations within the South Mountain Oil Field so as to ensure a representative report for EDC.  Each progress report shall also include one photo of each completed well pad berm for all well pad berms constructed from the date of the last progress report, if any, to the date of the current progress report.

    c. **Maintenance of BMP Structural Controls**: CRPC shall maintain structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

    d. **Retired Equipment Removal**: CRPC shall evaluate and inventory unused and retired equipment stored on the Facility, and CRPC shall phase out and physically remove the unused and retired equipment from the Facility by November 1, 2017.  Each year during the term of the Consent Decree, CRPC shall evaluate and remove any equipment at the Facility that is no longer in use.

    e. **Updates to Storm Water Pollution Prevention Maps**: Within thirty (30) days of the Effective Date, CRPC shall indicate all well pads on the

1 | Storm Water Pollution Prevention Plan ("SWPPP") maps with a symbol. CRPC
2 | shall also amend the SWPPP maps to include a grid reference system within thirty
3 | (30) days of the Effective Date.

   f. **Storm Water Pollution Prevention Plan**: Within thirty (30) days of the Effective Date, CRPC shall amend the Facility's SWPPP to incorporate all changes, improvements, sample log forms, and BMPs set forth in or resulting from this Consent Decree. CRPC shall include a description of the location of all BMPs referencing the SWPPP maps' grid reference location for each particular BMP. A copy of the amended SWPPP shall be provided to EDC within thirty (30) days of completion.

   g. **Annual Reports**: The General Permit requires the filing of annual reports for permitted facilities no later than July 15 following each reporting year. CRPC shall send a courtesy email to EDC on or immediately following the date that CRPC uploads its annual report to the California State Water Resources Control Board's Storm Water Multiple Application and Report Tracking System ("SMARTS"), notifying EDC that such filing has been made.

   8. **Environmental Mitigation Payment/Supplemental Environmental Project**: As mitigation for the violations alleged in EDC's 60-Day Notice and Complaint, CRPC shall enter into an option agreement to convey its right of surface access appurtenant to its mineral rights from the surface to a depth of five hundred (500) feet at a property located in Ventura County (the "Subject Property"), as described below and illustrated in the map attached hereto as **Exhibit** "**B**," within sixty (60) days of entry of this Consent Decree. Such option to acquire the surface access rights shall be made in favor of the Trust for Public Land ("TPL") as the optionee/grantee subject to the terms set forth in the term sheet attached hereto as **Exhibit** "**C**." The designated contact person for TPL is Alex Size, Project Manager, The Trust for Public Land, 101 Montgomery Street, Suite 900, San Francisco, CA 94104. The purpose of the option agreement is to offer TPL the

right to acquire the surface access rights over the Subject Property at or after such time as TPL purchases or otherwise acquires the surface estate in the Subject Property for conservation purposes. Until such time as the option is exercised, CRPC shall not exercise its rights of surface access over the Subject Property for mineral development. In addition to furthering TPL's goal of setting aside the Subject Property for conservation purposes, an additional benefit of this transaction will be to protect water quality in Ventura County from potential industrial sources of pollution. The option agreement shall be for a term of three (3) years from the date of its execution. The fair market value of the option agreement is greater than one hundred and thirty thousand dollars ($130,000.00).

> **Legal Description of Subject Property**:
>
> That certain real property, in the County of Ventura, State of California, being a portion of the Rancho Ex-Mission of San Buenaventura, Tract No. 1, as shown on the map filed in Book 2, page 103 of Miscellaneous Records (Maps), described as follows:
>
> Those rights, interests and estate excepted and reserved by Horace W. Carpentier and Rudolph Steinbach, parties of the first part, in the deed to Ernest H. Jennings, party of the second part, recorded January 21, 1885 in Book 15, page 90 of Deeds, and more particularly described as follows:
>
> The perpetual and exclusive right to all the oils, petroleum, coal oil, naphtha, mineral or carbon oils, asphaltum and all hydrocarbon substances and all other kindred substances in, upon, under or beneath the said premises, and the right of entering onto and upon and of passing along and over the said premises and every part and parcel thereof for the purpose of prospecting, searching, exploring, mining, digging and boring for all the above mentioned oils and substances, and the right of holding, using and occupying exclusively all such portions of said premises as they may require for tanks, pipes, pipe-lines, engines, derricks, rigs, machinery apparatus, shafts, structures, wells and works of every kind as may be required for the convenient prosecution of such business, and the exclusive right of extracting,

pumping storing, packing, tanking and barreling any and all said oils and substances in their crude condition, upon such parcels of said real property, and of removing, conducting, pumping, piping and transporting all said oils and substances over, out of and from said real property and every portion thereof, and the right of free access, roads, pipe lines and rights of way over, along and upon said real property and every portion thereof, to, from and between all and singular wells shafts and other structures that may be constructed on said premises, or any part of said lands or rancho of the Ex-Mission of San Buenaventura, by the parties of the first part, their servants, agents, lessees, vendees and assigns, for the purposes herein mentioned, and of free and uninterrupted egress from the same. And excepting and reserving to the said parties of the first part and their successors in estate, all structures, building, houses, wells, pipes, pumps and machinery and all other artificial structures made, constructed or employed in the business of obtaining piping and tanking petroleum and now existing on said premises, with the right of access and to maintain, repair and keep the same, and to use, occupy and enjoy the same on the condition as and the position where the same now are, in, on, upon, or under the following described land:

All that certain tract, piece or parcel of land situate and being in the County of Ventura, State of California, being known and designated as Subdivision "O" of the lands or Rancho of the Ex-Mission of San Buenaventura, as said rancho is subdivided and the subdivisions thereof delineated and designated on the map entitled "Map of the Rancho Ex Mission of San Buenaventura, Tract No. 1, subdivided after the survey made by Ed. T. Hare, County Surveyor of Ventura Co., Cal. September 1875," filed in the County Records Office of Ventura County, April 30th 1880, and recorded in Book 2 of Miscellaneous Records, on page 103, bounded and described as follows, to wit:

Commencing at the northwest corner of said Rancho, at stake in a rock mound O.1 and running thence along the East boundary of the Rancho Santa Ana South 51/2° West 182 chains to stake P.C.L. No. 2 in a rock mound; thence, along the northwest boundary of the Rancho Canada y Verde North 59 1/4° East 373 chains to stake C.L. No. 3 in a rock mound in the most northerly corner thereof; thence, along the southwest boundary of Subdivision "N" of said Ex-Mission lands North 32 1/2° West 70 chains to

stake in rock mound in the North line of said Rancho Ex-Mission of San Buenaventura and thence, along said North line and the South line of the Rancho Ojai South 75 3/4° West 262.60 chains to the place of commencement.

EXCEPTING THEREFROM all oil, gas and other hydrocarbon substances underlying and which may be produced from those portions of Lots 6 and 7 of Subdivision "O," Tract 1 as shown on the map entitled "Map of the Rancho Ex-Mission of San Buenaventura Tract No. 1" recorded in Book 2 of Miscellaneous Records on Page 103, and described in the Quitclaim of Mineral Deed from Union Oil Company of California to Saba Energy of Texas, Incorporated, and recorded October 26, 1993 as instrument no. 93-201658 of Official Records.

9. **Compliance Monitoring Funds**: CRPC shall reimburse EDC for the costs of monitoring the terms of this Consent Decree in the amount of ten thousand dollars ($10,000). Payment shall be made within thirty (30) days after the entry of this Consent Decree.

10. **Reimbursement of Fees and Costs**: CRPC shall reimburse EDC in the amount of one hundred and fifteen thousand dollars ($115,000.00) to help defray EDC's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to CRPC's attention, and negotiating a resolution of this action in the public interest. CRPC shall tender said payment, payable to Environmental Defense Center, within thirty (30) days of the Effective Date.

11. **Force Majeure**: A force majeure event is any event outside the reasonable control of CRPC that causes a delay in performing tasks required by this Consent Decree that cannot be cured by due diligence. Delay in performance of a task required by this Consent Decree caused by a force majeure event is not a failure to comply with the terms of this Consent Decree, provided that CRPC

notifies EDC of the event; the steps that CRPC will take to perform the task; the projected time that will be needed to complete the task; and the measures that have been taken or will be taken to prevent or minimize any impacts to storm water quality resulting from delay in completing the task.

CRPC will notify EDC of the occurrence of a force majeure event as soon as reasonably possible but, in any case, no later than fifteen (15) days after the occurrence of the event. In such event, the time for performance of the task will be extended for a reasonable period of time following the force majeure event.

By way of example and not limitation, force majeure events include:

    (i)    Acts of God, war, insurrection, or civil disturbance;

    (ii)    Earthquakes, landslides, fire, floods;

    (iii)    Actions or inactions of third parties over which CRPC has no control;

    (iv)    Unusually adverse weather conditions;

    (v)    Restraint by court order or order of public authority;

    (vi)    Strikes; and

    (vii)    Litigation, arbitration, or mediation that causes delay.

12. **Continuous Jurisdiction**: This Court retains jurisdiction over this matter until the Consent Decree terminates as set forth in Paragraph 16. While this Decree remains in force, this case may be reopened without a filing fee, so that the Parties may apply to the Court for any further order that may be necessary to enforce compliance with this Decree or to resolve any dispute regarding the terms or conditions of this Decree. In the event that this case is reopened, CRPC does not waive, and reserves all rights to assert, any defense it may have at law or in equity that it otherwise may have to EDC's claims for relief.

13. **Dispute Resolution**: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) business days of receiving written

notification from the other Party of a request for a meeting to determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge assigned to this action. The Parties agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference pursuant to this Paragraph. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the District Court. In resolving any dispute arising from this Consent Decree, the Court shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the District Court. The District Court shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof.

14. **Submission of Consent Decree to Federal Agencies**: The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5, no consent judgment can be entered in a Clean Water Act suit in which the United States is not a Party prior to forty-five (45) days following the receipt of a copy of the proposed consent judgment by the U.S. Department of Justice ("DOJ") and the Administrator of the EPA. Therefore, within three (3) business days of the signing of this Consent Decree by the Parties, EDC shall serve copies of it upon the Administrator of the EPA and the DOJ. In the event DOJ and/or EPA comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ and/or EPA.

15. **Effective Date**: The Effective Date of this Consent Decree shall be upon the subsequent entry of the Consent Decree by the Court.

1      16. **Termination**: With respect to the provisions in Paragraph 8, this
2 Consent Decree terminates thirty-eight (38) months after the Effective Date, or
3 through the conclusion of any proceeding to enforce the provisions of Paragraph 8
4 initiated prior to that thirty-eight (38) month period, or until the exercise of the
5 options described in Paragraph 8 and Exhibit C, whichever is the later occurrence.
6 With respect to the remaining provisions in this Consent Decree, this Consent
7 Decree terminates eighteen (18) months after the Effective Date, or through the
8 conclusion of any proceeding to enforce this Consent Decree initiated prior to that
9 eighteen (18) month period, or until the completion of any payment or affirmative
10 duty required by this Consent Decree, whichever is the later occurrence. In
11 addition, following the date of termination of this Consent Decree, this Court shall
12 retain jurisdiction for the purposes of enforcing this Consent Decree solely as to: (a)
13 any request for enforcement of this Consent Decree pending before the Court on the
14 date of termination, and (b) any dispute regarding the enforcement of this Consent
15 Decree that arises prior to the date of termination, but only to the extent the dispute
16 either (i) could not reasonably have been brought before the Court prior to the date
17 of termination, or (ii) the Parties agree in writing that the dispute may be resolved
18 by the Court after the date of termination.

19      17. **Joint Drafting**: Both Parties have participated in drafting this
20 Consent Decree.

21      18. **Execution in Counterparts**: The Consent Decree may be executed in
22 one or more counterparts which, taken together, shall be deemed to constitute one
23 and the same document.

24      19. **Facsimile Signatures**: The Parties' signatures to this Consent Decree
25 transmitted by facsimile or electronic mail transmission shall be deemed binding.

26      20. **Construction**: The language in all parts of this Consent Decree,
27 unless otherwise stated, shall be construed according to its plain and ordinary
28 meaning. The captions and paragraph headings used in this Consent Decree are for

reference only and shall not affect the construction of this Consent Decree.

21. **Integrated Consent Decree**: All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

22. **Severability**: In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

23. **Choice of Law**: This Consent Decree shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

24. **Full Settlement**: This Consent Decree constitutes a full and final settlement of this matter. It is expressly understood and agreed that the Consent Decree has been freely and voluntarily entered into by the Parties with and upon advice of counsel.

25. **Negotiated Agreement**: The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

26. **Amendments**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by the Parties, and subsequently approved by the Court.

27. **Objections by the Court**: If, for any reason, the Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the discretion of either Party. The Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Consent Decree.

28. **Notifications**: Notifications required by this Consent Decree must be in writing. The sending Party may use any of the following methods of delivery: (1) personal delivery; (2) registered or certified mail, in each case return receipt

requested and postage prepaid; (3) a nationally recognized overnight courier, with all fees prepaid; or (4) email, provided that receipt of the email content can be confirmed by the sender, with time of receipt being the uniform time the email enters the information processing system that the recipient has designated or uses for the purpose of receiving email. The preferred method of delivery shall be email. For a notice or other communication regarding this Consent Decree to be valid, it must be delivered to the receiving Party at one or more addresses listed below or to any other address designated by the receiving Party in a notice in accordance with this Paragraph 18.

**If to EDC**:

Margaret Hall
Environmental Defense Center
906 Garden Street
Santa Barbara, CA 93101
mhall@environmentaldefensecenter.org

With copies sent to:

Douglas Chermak
Lozeau Drury LLP
410 12th Street, Suite 250
Oakland, CA 94607
doug@lozeaudrury.com

**If to CRPC:**

Adam Smith
Managing Counsel, California Resources Corporation
California Resources Production Company
27200 Tourney Road, Suite 315
Valencia, CA 91355
Adam.Smith@crc.com

With copies sent to:

Michael N. Mills
Stoel Rives LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95815

|     |                                                                                      |
| --- | ------------------------------------------------------------------------------------ |
| 1   | michael.mills@stoel.com                                                              |
| 2   | A notice or other communication regarding this Consent Decree will be                |
| 3   | effective when received unless the notice or other communication is received after   |
| 4   | 5:00 p.m. on a business day, or on a day that is not a business day the notice will be |
| 5   | deemed received at 9:00 a.m. on the next business day. A notice or other             |
| 6   | communication will be deemed to have been received: (a) if it is delivered in        |
| 7   | person or sent by registered or certified mail or by nationally recognized overnight |
| 8   | courier, upon receipt as indicated by the date on the signed receipt; or (b) if the  |
| 9   | receiving Party rejects or otherwise refuses to accept it, or if it cannot be delivered |
| 10  | because of a change in address for which no notice was given, then upon that         |
| 11  | rejection, refusal, or inability to deliver.                                         |
| 12  | ENVIRONMENTAL DEFENSE CENTER                                                         |
| 13  | Date: _____, 2017                                                          |
| 14  |                                                                                      |
| 15  | _____                                              |
| 16  | Judith Pirkowitsch<br>President, Board of Directors                                  |
| 17  | Environmental Defense Center                                                         |
| 18  |                                                                                      |
| 19  | CALIFORNIA RESOURCES PRODUCTION CORPORATION                                          |
| 20  | Date: _____, 2017                                                          |
| 21  |                                                                                      |
| 22  | _____                                              |
| 23  | David Stoneburner<br>Field Manager                                                   |
| 24  | California Resources Production Corporation                                          |
| 25  |                                                                                      |
| 26  |                                                                                      |
| 27  |                                                                                      |
| 28  |                                                                                      |

Approved as to form:

    LOZEAU DRURY LLP

        Date: _____, 2017

        By: _____
    Douglas Chermak
    Attorneys for Environmental Defense Center


    ENVIRONMENTAL DEFENSE CENTER

        Date: _____, 2017

    _____
    Margaret Hall
    Attorney for Environmental Defense Center

    STOEL RIVES LLP

        Date: _____, 2017

    _____
    Michael N. Mills
    Shannon L. Morrissey
    Attorneys for California Resources Production Corporation


IT IS SO ORDERED.

DATED: April 20, 2017

                                                */s/ George H. Wu*
                                      _____
                                      GEORGE H. WU,
                                      UNITED STATES DISTRICT JUDGE